## THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALEX E. RINEHART, On Behalf of Himself And All Others Similarly Situated,<br><br>      Plaintiff,<br><br> vs.<br><br>LEHMAN BROTHERS HOLDINGS INC., RICHARD S. FULD, JR., MICHAEL L. AINSLIE, JOHN F. AKERS, ROGER S. BERLIND, THOMAS H. CRUIKSHANK, MARSHA JOHNSON EVANS, SIR CHRISTOPHER GENT, ROLAND A. HERNANDEZ, HENRY KAUFMAN, JOHN D. MACOMBER, ERIN M. CALLAN, WENDY M. UVINO, THE EMPLOYEE BENEFIT PLANS COMMITTEE, and JOHN DOES 1-10,<br><br>      Defendants. | Civil Action:  08cv5598 |

## CLASS ACTION COMPLAINT
## FOR VIOLATIONS OF THE EMPLOYEE RETIREMENT
## <u>INCOME SECURITY ACT ("ERISA")</u>

Plaintiff, a participant in the Lehman Brothers Savings Plan (the "Plan"), covering substantially all employees of Lehman Brothers Holdings Inc. and its subsidiaries (collectively "Lehman" or the "Company"), individually and on behalf of all others similarly situated (the "Participants"), alleges as follows:

### INTRODUCTION

1.  This is a class action brought pursuant to § 502 of ERISA, 29 U.S.C. § 1132, against the Plan's fiduciaries, including Lehman, on behalf of Participants in and beneficiaries of the Plan.

2.      Throughout the Class Period (September 13, 2006 through the present), the Plan invested in Lehman common stock ("Lehman Stock" or "Company Stock"), which was offered as one of the investment alternatives in the Participant Contribution Component of the Plan.

3.      Plaintiff's claims arise from the failure of Defendants, who are Plan fiduciaries, to act solely in the interest of the Participants and beneficiaries of the Plan, and to exercise the required skill, care, prudence, and diligence in administering the Plan and the Plan's assets during the Class Period, as is required by ERISA.

4.      This action is brought on behalf of the Plan and seeks losses to the Plan for which Defendants are personally liable pursuant to ERISA §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109 and 1132(a)(2). In addition, under § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), Plaintiff seeks other equitable relief from Defendants, including, without limitation, injunctive relief and, as available under applicable law, constructive trust, restitution, and other monetary relief.

5.      As a result of Defendants' fiduciary breaches, as hereinafter enumerated and described, the Plan has suffered substantial losses, resulting in the depletion of millions of dollars of the retirement savings and anticipated retirement income of the Plan's Participants. Under ERISA, the breaching fiduciaries are obligated to restore to the Plan the losses resulting from their fiduciary breaches.

6.      Because Plaintiff's claims apply to Participants and beneficiaries as a whole, and because ERISA authorizes Participants such as Plaintiff to sue for plan-wide relief for breach of fiduciary duty, Plaintiff brings this as a class action on behalf of all Participants and beneficiaries of the Plan during the Class Period. Plaintiff also brings this action as a participant seeking Plan-wide relief for breach of fiduciary duty on behalf of the Plan.

7.     In addition, because the information and documents on which Plaintiff's claims are based are, for the most part, solely in Defendants' possession, certain of Plaintiff's allegations are by necessity upon information and belief.  At such time as Plaintiff has had the opportunity to conduct additional discovery, Plaintiff will, to the extent necessary and appropriate, further amend the Complaint, or, if required, seek leave to amend to add such other additional facts as are discovered that further support each of the following Counts below.

JURISDICTION AND VENUE

8.     Subject Matter Jurisdiction.  This is a civil enforcement action for breach of fiduciary duty brought pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a).  This Court has original, exclusive subject matter jurisdiction over this action pursuant to the specific jurisdictional statute for claims of this type, ERISA § 502(e)(l), 29 U.S.C. § 1132(e)(l).  In addition, this Court has subject matter jurisdiction pursuant to the general jurisdictional statute for "civil actions arising under the . . . laws . . . of the United States."  28 U.S.C. § 1331.

9.     Personal Jurisdiction.  ERISA provides for nation-wide service of process, ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).  All of the Defendants are residents of the United States, and this Court therefore has personal jurisdiction over them.  This Court also has personal jurisdiction over them pursuant to Fed. R. Civ. P. 4(k)(l)(A), because they all would be subject to the jurisdiction of a court of general jurisdiction in the District of New York.

10.     Venue.  Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan was administered in this district, some or all of the fiduciary breaches for which relief is sought occurred in this district, and/or some Defendants reside or maintain their primary place of business in this district.

PARTIES

Plaintiff

11.     Plaintiff Alex E. Rinehart is a resident of Boynton, Florida.  Plaintiff is a former Lehman employee and is a participant in the Plan.

Defendants

12.     Defendant Lehman serves the financial needs of corporations, governments and municipalities, institutional clients and high-net-worth individuals worldwide.  The Company provides a full array of services in equity and fixed income sales, trading and research, investment banking, asset management, private investment management and private equity.  The Company is headquartered in New York.  The Company also has regional offices in North America, Europe, the Middle East, Latin America and the Asia Pacific region.

13.     Throughout the Class Period, Lehman's responsibilities included, along with its officers, directors and executives, broad oversight of and ultimate decision-making authority respecting the management and administration of the Plan and the Plan's assets, as well as the appointment, removal, and, thus, monitoring of other fiduciaries of the Plan that it appointed, or to whom it assigned fiduciary responsibility. Throughout the Class Period, the Company exercised discretionary authority with respect to management and administration of the Plan and/or management and disposition of the Plan's assets.

14.     Defendant Lehman Board of Directors.  The Directors who served on the Lehman Board of Directors (the "Board") were fiduciaries, because they exercised decision-making authority regarding the appointment of Plan fiduciaries and the management of the Plan's assets throughout the Class Period.  Among other things, the Board determines the annual profit sharing

contributions that are made under the Plan.  Moreover, Lehman acted through the Board in carrying out its Plan-related fiduciary duties and responsibilities, and, thus, members of the Board were fiduciaries to the extent of their personal exercise of such responsibilities.

15.    The "Director Defendants" who served on the Board and acted as fiduciaries with respect to the Plan during the Class Period are as follows:

(a)    Defendant Richard S. Fuld, Jr. ("Fuld") was the Chief Executive Officer and Chairman of the Board of Directors of the Company during the Class Period.  During the Class Period, defendant Fuld was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

(b)    Defendant Michael L. Ainslie ("Ainslie") is a Director of the Company. During the Class Period, defendant Ainslie was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

(c)    Defendant John F. Akers ("Akers") is a Director of the Company. During the Class Period, defendant Akers was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary

authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

(d)    Defendant Roger S. Berlind ("Berlind") is a Director of the Company. During the Class Period, defendant Berlind was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

(e)    Defendant Thomas H. Cruikshank ("Cruikshank") is a Director of the Company.  During the Class Period, defendant Cruikshank was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

(f)    Defendant  Marsha Johnson Evans ("Evans") is a Director of the Company.  During the Class Period, defendant Evans was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

(g)    Defendant Sir Christopher Gent ("Gent") is a Director of the Company.

During the Class Period, defendant Gent was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

(h)    Defendant Roland A. Hernandez ("Hernandez") is a Director of the Company.  During the Class Period, defendant Hernandez was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

(i)    Defendant Henry Kaufman ("Kaufman") is a Director of the Company. During the Class Period, defendant Kaufman was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

(j)    Defendant John D. Macomber ("Macomber") is a Director of the Company.  During the Class Period, defendant Macomber was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of Plan fiduciaries and with respect to the management of the Plan, he possessed

discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

Officer Defendants

16.    Defendant Erin M. Callan ("Callan") was the Chief Financial Officer, Controller and Executive Vice President of the Company during the Class Period.

17.    Defendant Wendy M. Uvino ("Uvino") is Chairperson of Lehman Brothers Holdings Inc.'s Employee Benefit Plans Committee.  Defendant Uvino acted as a fiduciary with respect to the Plan at all times during the Class Period.  Defendants Uvino signed the Form 11-K, dated June 29, 2007.

18.    Unknown Fiduciary Defendants 1-10 are residents of the United States and are or were fiduciaries of the Plan during the Class Period.  These defendants whose identities are currently unknown to Plaintiff, may include additional Lehman employees.  Once their identities are ascertained, Plaintiff will seek leave to join them under their true names.

19.    Defendant Employee Benefit Plans Committee.  The members of the Employee Benefit Plans Committee are plan fiduciaries and supervise the investment of the assets of the Plan, and make decisions concerning investment options available under the Plan.  The Employee Benefit Plans Committee is comprised of defendant Uvino and defendants John Does 1-10.

## CLASS ACTION ALLEGATIONS

20.    Plaintiff brings this action as a class action pursuant to Rules 23(a), (b)(l), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of himself and the following class of persons similarly situated (the "Class"):

> All persons who are participants in or beneficiaries of the Plan at any time between September 13, 2006 to the present (the "Class Period") and whose accounts included investments in Lehman Stock.

21.     Plaintiff meets the prerequisites of Rule 23(a) to bring this action on behalf of the Class because:

22.     Numerosity.  The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes there are, at a minimum, thousands of members of the Class who participated in, or were beneficiaries of, the Plan during the Class Period.

23.     Commonality.  Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     Whether Defendants acted as fiduciaries;

(b)     Whether Defendants breached their fiduciary duties to the Plan, Plaintiff and members of the Class by failing to act prudently and solely in the interests of the Plan, and the Plan's Participants and beneficiaries;

(c)     Whether Defendants violated ERISA;

(d)     Whether the Plan suffered a loss and, by extension, members of the Class sustained a diminution in vested benefits, and

(d)     What is the proper measure of loss to the Plan and subsequent allocation of vested benefits to the Plan's Participants.

24.    Typicality.   Plaintiff's claims are typical of the claims of the members of the Class because the Plan, the Plaintiff and the other members of the Class, each sustained a diminution in vested benefits arising out of Defendants' wrongful conduct in violation of federal law as complained of herein.

25.    Adequacy.   Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action, complex, and ERISA litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

26.    Class action status in this ERISA action is warranted under Rule 23(b)(l)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede their ability to protect their interests.

27.    Class action status is also warranted under the other subsections of Rule 23(b) because: (i) prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants; (ii) Defendants have acted or refused to act on grounds generally applicable to the Plan and the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole; and (iii) questions of law or fact common to members of the Class predominate over any questions affecting only individual members and a class action is superior to the other available methods for the fair and efficient adjudication of this controversy.

THE PLAN

The Plan

28.    The Plan is an "employee pension benefit plan" as defined by §§ 3(3) and (3)(2)(A) of ERISA, 29 U.S.C. §§ 1002(3) and 1002(2)(A).

29.    The Plan is a legal entity that can sue or be sued.  ERISA § 502(d)(1), 29 U.S.C. § 1132(d)(1).

30.    In this action for breach of fiduciary duty, the Plan is neither a plaintiff nor a defendant.  Rather, Plaintiff request relief for the benefit of the Plan and for the benefit of its Participants.

31.    The Plan is a "defined contribution plan" or "individual account" plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34), in that the Plan provides for individual accounts for each participant and for benefits based solely upon the amount contributed to the Participants' account, and any income, expenses, gains and losses, and any forfeitures of accounts of other Participants which may be allocated to such Participants' accounts. Consequently, retirement benefits provided by the Plan are based solely on the amounts allocated to each individual's account.

32.    The Plan is a voluntary contribution Plan whereby Participants make contributions to the Plan ("Voluntary Contributions") and direct the Plan to purchase investments with those contributions from options pre-selected by Defendants which are then allocated to Participants' individual accounts.

33.    In the Company's most recent filed Form 11-K, dated June 29, 2007, the Plan is described as the following:

The Lehman Brothers Savings Plan (the "Plan") is a defined contribution plan. The Plan became effective January 1, 1984 and was amended and restated from time to time thereafter, including a restatement on December 22, 2006. Under the terms of the Plan, qualified employees of Lehman Brothers Holdings Inc. ("Lehman") and its participating subsidiaries (collectively, the "Company") are eligible to participate in the Plan as soon as administratively practicable following their date of employment.

The December 2006 Plan restatement amended the Plan to permit the end-of-year-employment requirement for eligibility to share in employer Matching contributions to be satisfied by employment with an Affiliate not participating in the Plan, rather than solely by employment with participating employers, effective January 1, 2006, and to eliminate the minimum dollar amounts required for withdrawals, except for loans and hardship withdrawals, effective December 4, 2006.

The December 2006 Plan restatement also included amendments providing for the merger of the Townsend Analytics, Ltd. 401(k) Plan and the Campus Door 401(k) Plan into the Plan effective January 2, 2007 and January 16, 2007, respectively. The amendments also provided past service credit, for purposes of eligibility to share in Employer Contributions and vesting, (x) to anyone employed by Townsend Analytics, Ltd. on (i) January 1, 2007 or (ii) any applicable earlier date during 2005 or 2006 immediately preceding their transfer to the employ of the Company, and (y) to anyone employed by Campus Door Inc. on (i) January 1, 2007 or (ii) any applicable earlier date during 2006 immediately preceding their transfer to the employ of the Company.

A prior Plan restatement on December 29, 2005 included amendments to (i) reflect the final 401(k) and 401(m) regulations, (ii) provide past service credit for purposes of eligibility to share in Employer Contributions and vesting to certain employees of BNC Mortgage, Inc. and Finance America, LLC and (iii) merge the BNC Mortgage, Inc. 401(k) Plan and the Finance America 401(k) Retirement Savings Plan into the Plan, effective February 1, 2006.

The Plan is subject to the provisions of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). A more complete description of the Plan is contained in the Plan document, which is available to all participants from the Lehman Brothers Holdings Inc. Employee Benefit Plans Committee (the "Plan Administrator").

Records of all financial transactions involving Plan assets including receipt of contributions and investment earnings, payment of benefits and expenses, and purchase and sale of investments, are maintained by Fidelity Management Trust Company and its affiliates (collectively referred to as "FMTC").

34.     The Plan also provides for a match in Company stock: "Upon enrollment, a participant may elect to contribute, on a pre-tax basis, between one and fifty percent of eligible compensation, as defined by the Plan document.   The Company provides a discretionary matching contribution, in Lehman stock or cash, on behalf of eligible participants who have a twelve month period of service, as defined by the Plan document, and are employees on the last day of the Plan year.  The amount of the discretionary contribution, if any, will be determined by the Company's Board of Directors."  See Form 11-K, dated June 29, 2006.

35.     As of December 31, 2006, the Plan held $233,380,458 in Company stock.

Plan Fiduciaries

36.     Named Fiduciaries.  ERISA requires every plan to provide for one or more named fiduciaries of the plan pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1002(21)(A).  The person named as the "administrator" in the plan instrument is automatically a named fiduciary, and in the absence of such a designation, the sponsor is the administrator.  ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

37.     De Facto Fiduciaries.  ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under ERISA § 402(a)(1), but also any other persons who in fact perform fiduciary functions.  Thus, a person is a fiduciary to the extent "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management of disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary

authority or discretionary responsibility in the administration of such plan." ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i).

38.    Each of the Defendants was a fiduciary with respect to the Plan and owed fiduciary duties to the Plan and its Participants under ERISA in the manner and to the extent set forth in the governing Plan documents, through their conduct, and under ERISA.

39.    As fiduciaries, Defendants were required by ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) to manage and administer the Plan -- and the Plan's investments -- solely in the interest of the Plan's Participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

40.    Plaintiff does not allege that each defendant was a fiduciary with respect to all aspects of the Plan's management and administration.  Rather, as set forth below, Defendants were fiduciaries to the extent of the specific fiduciary discretion and authority assigned to or exercised by each of them, and, as further set forth below, the claims against each defendant are based on such specific discretion and authority.

LEHMAN STOCK WAS AN
IMPRUDENT INVESTMENT FOR THE PLAN

41.    From the beginning of the Class Period, the Company was heavily invested in collateralized debt obligations ("CDOs") and subprime mortgage backed derivatives and was a participant in the mortgage backed security origination sector.  As a result, the Company actively carried financial positions linked to the instruments described above on its balance sheet and

reported the "value" of these positions to the Company's investors (which included Plan Participants).

42. Throughout the Class Period, Defendants failed to disclose material adverse facts about the Company's financial well-being, business operations, and prospects. Specifically, Defendants failed to disclose or indicate the following: (i) that the Company had failed to fully disclose the nature and extent of its exposure to losses incurred from trading in subprime mortgage backed derivatives; (ii) that the Company had failed to fully disclose the nature and extent of its exposure to losses incurred from CDOs, and had failed to timely write-down its positions in these securities; (iii) that the Company had failed to fully disclose the nature and extent of its exposure to losses incurred from mortgage backed security originations, and had failed to timely write-down its positions in these securities; (iv) that the Company had materially overvalued its positions in commercial and subprime mortgages, and in securities tied to these mortgages; (v) that the Company had inadequate reserves for its mortgage and credit related exposure; (vi) that the Company's financial statements were not prepared in accordance with Generally Accepted Accounting Principles ("GAAP"); and (vii) that the Company lacked adequate internal and financial controls.

43. In or around July 2007, the Company started to disclose facts -- which it withheld during the Class Period -- regarding the proper value of its positions in subprime and related securities.

44. During the Class Period, Defendants offered Company stock in the Plan even though they knew or were reckless in not knowing that the proper value of its positions in subprime and related securities.

45.    On July 10, 2007, the Company reported in its Form 10-Q for the quarter ended May 31, 2007 that it had "unrealized" losses of $459 million in the quarter from mortgages and mortgage-backed assets in its inventory.   This Form 10-Q was a fiduciary communication and was incorporated into Plan documents, including, but not limited to, the Company's SPD.

46.    On that same day, Bloomberg reported that Standard & Poor's ("S&P") indicated that it may cut ratings on $12 billion of bonds backed by subprime mortgages.  This significantly cut into the Company's trading profits as the Company was the largest underwriter of mortgage bonds.

47.    On this news, the Company's shares fell $3.76 per share, or over 5 percent, to close on July 10, 2007 at $71.10 per share, on unusually heavy trading volume.

48.    Throughout the remainder of the Class Period, the Company continued to downplay the risks associated with owning CDOs and related securities, and the nature and true extent of the Company's exposure to subprime related assets and financial positions.

49.    For example, on July 18, 2007, in an article published by Bloomberg entitled Lehman Brothers Says Subprime Speculation Unfounded, the Company denied speculation that it would face greater potential losses from subprime mortgages than those previously disclosed to investors and Plan Participants, stating: "The rumors related to subprime exposure are unfounded." (Emphasis added).

50.    Contrary to the Company's assurances about its exposure, Bloomberg reported, on July 26, 2007, that the risk of owning Lehman's bonds "soared" and its share price plunged "as concerns escalated that investment banks will be hurt by losses from subprime mortgages and corporate debt."  The article further stated that credit-default swaps (five-year contracts used to

bet on the companies' creditworthiness) on $10 million of the Company's bonds jumped as much as $24,000 to $104,000 a year. Subsequently, the cost of credit-default swaps protecting the Company's obligations against default surged to $465,000 a year. Such increases in the cost of credit-default swaps signaled a significant deterioration in investor confidence.

51.    On this news, the Company's shares fell an additional $3.16 per share, or 4.7 percent, to close on July 26, 2007 at $64.50 per share, again on unusually heavy trading volume.

52.    On July 31, 2007, Bloomberg reported that "on Wall Street, Bear Stearns Cos., Lehman Brothers Holdings Inc., Merrill Lynch & Co. and Goldman Sachs Group Inc., are as good as junk." This was because the bonds of the investment banks lost about $1.5 billion of their face value as the risk of owning the securities had dramatically increased. The prices of credit-default swaps for Lehman, the number one mortgage bond underwriter, equated to a Ba1 rating, implying that the Company's credit ratings were below investment grade.

53.    On this news, the Company's shares fell an additional $2.80 per share, or over 4.3 percent, to close on July 31, 2007 at $62.00 per share, again on heavy trading volume.

54.    On September 18, 2007, the Company issued a press release entitled Lehman Brothers Reports Third Quarter Results; Reports Net Income of $887 Million and Net Revenues of $4.3 Billion. It was in this press release that the Company reported net revenues of $2.4 billion for the third quarter of fiscal 2007, a decrease of 14% from $2.8 billion in the third quarter of fiscal 2006. The Company also reported that Fixed Income Capital Markets reported net revenues of $1.1 billion, a decrease of 47% from $2.0 billion in the third quarter of fiscal 2006, primarily due to lower performances within Credit and Securitized Products. Within Fixed

Income Capital Markets, the Company recorded very substantial valuation reductions, most significantly on leveraged loan commitments and residential mortgage-related positions.

55.     This September 18, 2007 press release was filed with the SEC on a Form 8-K on September 18, 2007.  This Form 8-K was a fiduciary communication and was incorporated into Plan documents, including, but not limited to, the Company's SPD.

56.     On December 13, 2007, the Company issued a press release entitled *Lehman Brothers Reports Record Net Revenues, Net Income and Earnings Per Share for Fiscal 2007; Reports Net Income of $886 Million and Net Revenues of $4.4 Billion for the Fourth Quarter of Fiscal 2007*.

57.     It was in this press release that the Company reported the following:

> Net revenues (total revenues less interest expense) for the fourth quarter of fiscal 2007 were $4.4 billion, a decrease of 3% from $4.5 billion reported in the fourth quarter of fiscal 2006 and an increase of 2% from $4.3 billion reported in the third quarter of fiscal 2007.  Capital Markets net revenues decreased 10% to $2.7 billion in the fourth quarter of fiscal 2007 from $3.0 billion in the fourth quarter of fiscal 2006.  Fixed Income Capital Markets reported net revenues of $860 million, a decrease of 60% from $2.1 billion in the fourth quarter of fiscal 2006, due to the very challenging markets experienced during the period, although strong results from client activity were reported in the Foreign Exchange and Commodities businesses.  Fixed Income Capital Markets recorded negative valuation adjustments on trading assets, principally in the Firm's Securitized Products and Real Estate businesses.  These valuation adjustments were offset, in part, by valuation gains on economic hedges and liabilities, as well as realized gains from the sale of certain leveraged loan positions, resulting in a net revenue reduction in Fixed Income Capital Markets of approximately $830 million.  Equities Capital Markets reported record net revenues of $1.9 billion, more than double the $900 million reported in the fourth quarter of fiscal 2006.  This performance was driven by solid customer flow activities as well as gains from private equity and the Firm's investment in GLG Partners.  These results represent the fourth straight quarter that Equities Capital Markets has surpassed $1 billion in net revenues.  Investment Banking reported net revenues of $831 million, a

> decrease of 3% from $858 million in the fourth quarter of fiscal
> 2006, driven by declines in debt and equity origination revenues,
> which decreased 38% and 6%, respectively, from the prior year's
> period. Merger and acquisition advisory reported its second-
> highest net revenue quarter, an increase of 52% from the fourth
> quarter of fiscal 2006. Investment Management reported record
> net revenues of $832 million in the fourth quarter of fiscal 2007, an
> increase of 30% from $640 million in the fourth quarter of fiscal
> 2006. This performance was driven by record revenues in Asset
> Management and strong revenues in Private Investment
> Management. Assets under management grew to a record $282
> billion.

(Emphasis added).

58.    This December 13, 2007 press release was filed with the SEC on a Form 8-K on

December 13, 2007. This Form 8-K was a fiduciary communication and was incorporated into

Plan documents, including, but not limited to, the Company's SPD.

59.    On January 17, 2008, the Company issued a press release announcing that it

would substantially reduce its resources and capacity in the U.S. residential mortgage origination

space.

60.    On June 16, 2008, the Company issued a press release entitled Lehman Brothers

Reports Second Quarter Results -- Reports Net Loss of $2.8 Billion, or ($5.14) Per Share. It was

in this press release that the Company reported a net loss of $2.8 billion for the second quarter

ended May 31, 2008, compared to net income of $489 million for the first quarter of fiscal 2008

and $1.3 billion for the second quarter of fiscal 2007. Further, for the first half of fiscal 2008,

the Company reported a net loss of approximately $2.3 billion, compared to net income of $2.4

billion, for the first half of fiscal 2007.

61.     This June 16, 2008 press release was filed with the SEC on a Form 8-K on June 16, 2008.  This Form 8-K was a fiduciary communication and was incorporated into Plan documents, including, but not limited to, the Company's SPD.

62.     On June 29, 2006, the Company filed its Form 11-K for the year ended December 31, 2005 for the Plan, under the signature of defendant Uvino.  The Form 11-K was fiduciary communication and incorporated the Company's financials.

63.     Throughout the Class Period, Defendants failed to disclose material adverse facts about the Company's financial well-being, business operations, and prospects. Specifically, Defendants failed to disclose or indicate the following: (i) that the Company had failed to fully disclose the nature and extent of its exposure to losses incurred from trading in subprime mortgage backed derivatives; (ii) that the Company had failed to fully disclose the nature and extent of its exposure to losses incurred from CDOs, and had failed to timely write-down its positions in these securities; (iii) that the Company had failed to fully disclose the nature and extent of its exposure to losses incurred from mortgage backed security originations, and had failed to timely write-down its positions in these securities; (iv) that the Company had materially overvalued its positions in commercial and subprime mortgages, and in securities tied to these mortgages; (v) that the Company had inadequate reserves for its mortgage and credit related exposure; (vi) that the Company's financial statements were not prepared in accordance with Generally Accepted Accounting Principles ("GAAP"); and (vii) that the Company lacked adequate internal and financial controls.

THE LAW UNDER ERISA

64.     ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), provides, in pertinent part, that a civil action may be brought by a participant for relief under ERISA § 409, 29 U.S.C. § 1109.

65.     ERISA § 409(a), 29 U.S.C. § 1109(a), "Liability for Breach of Fiduciary Duty," provides, in pertinent part, that any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

66.     ERISA § 404(a)(l)(A) and (B), 29 U.S.C. § 1104(a)(l)(A) and (B), provides, in pertinent part, that a fiduciary shall discharge his duties with respect to a plan solely in the interest of Participants and beneficiaries, for the exclusive purpose of providing benefits to Participants and their beneficiaries, and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

67.     These fiduciary duties under ERISA § 404(a)(l)(A) and (B) are referred to as the duties of loyalty, exclusive purpose and prudence, and are the "highest known to the law." They entail, among other things:

        (a)     The duty to conduct an independent and thorough investigation into, and continually to monitor, the merits of all the investment alternatives of a plan, including in this instance the Plan, which invested in Lehman Stock, to ensure that each investment is a suitable option for the Plan;

(b)     The duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an "eye single" to the interests of the Participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the Plan's sponsor; and

(c)     A duty to disclose and inform, which encompasses: (i) a negative duty not to misinform; (ii) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful; and (iii) a duty to convey complete and accurate information material to the circumstances of Participants and beneficiaries.

68.     ERISA § 405(a), 29 U.S.C. § 1105(a), "Liability for breach by co-fiduciary," provides, in pertinent part, that ". . . [i]n addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances: (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by his failure to comply with section 404(a)(l), 29 U.S.C. § 1104(a)(l), in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach."

69.     Plaintiff therefore brings this action under the authority of ERISA § 502(a)(2) for Plan-wide relief under ERISA § 409(a) to recover losses sustained by the Plan arising out of the breaches of fiduciary duties by Defendants for violations under ERISA § 404(a)(l) and ERISA § 405(a).

DEFENDANTS' FIDUCIARY STATUS

70.    ERISA requires every plan to provide for one or more named fiduciaries who will have "authority to control and manage the operation and administration of the plan." § 402(a)(l), 29 U.S.C. § 1102(a)(l).

71.    During the Class Period, all of the Defendants acted as fiduciaries of the Plan pursuant to § 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A) and the law interpreting that section. As outlined herein, Defendants all had discretionary authority and control with respect to the management of the Plan and/or the management or disposition of the Plan's investments and assets, and/or had discretionary authority or responsibility for the administration of the Plan.

72.    During the Class Period, Defendants' direct and indirect communications with the Plan's Participants included statements regarding investments in Company Stock. Upon information and belief, these communications included, but were not limited to, SEC filings, annual reports, press releases, Company presentations made available to the Plan's Participants via the Company's website and Plan-related documents which incorporated and/or reiterated these statements.

73.    Defendants also acted as fiduciaries to the extent of this activity.

74.    In addition, under ERISA, in various circumstances, non-fiduciaries who knowingly participate in fiduciary breaches may themselves be liable. To the extent any of the Defendants are held not to be fiduciaries, they remain liable as non-fiduciaries who knowingly

participated in the breaches of fiduciary duty described below.

CAUSES OF ACTION

COUNT I

75.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

76.    At all relevant times, as alleged above, Defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

77.    As alleged above, Defendants were responsible, in different ways and to differing extents, for the selection and monitoring of the Plan's investment options, including the option of Company Stock.

78.    Under ERISA, fiduciaries who exercise discretionary authority or control over management of a plan or disposition of a plan's assets are responsible for ensuring that investment options made available to participants under a plan are prudent.  Furthermore, such fiduciaries are responsible for ensuring that assets within the plan are prudently invested. Defendants were responsible for ensuring that all investments in Lehman Stock in the Plan were prudent and that such investment was consistent with the purpose of the Plan.  Defendants are therefore liable for losses incurred as a result of such investments being imprudent.

79.    A fiduciary's duty of loyalty and prudence requires it to disregard plan documents or directives that it knows or reasonably should know would lead to an imprudent result or would otherwise harm plan participants or beneficiaries. ERISA § 404(a)(l)(D), 29 U.S.C. § 1104(a)(l)(D).  Thus, a fiduciary may not blindly follow plan documents or directives that would

lead to an imprudent result or that would harm plan participants or beneficiaries, nor may it allow others, including those whom they direct or who are directed by the plan, including plan trustees, to do so.

80.    Moreover, during the Class Period, despite their knowledge of the imprudence of the investment, Defendants failed to take any meaningful steps to prevent the Plan, and indirectly the Plan's Participants and beneficiaries, from suffering losses as a result of the Plan's investment in Lehman Stock.  Further, given that such a high concentration of the assets of the Plan was invested in the stock of a single company (Lehman), Defendants were obliged to have in place some financial strategy to address the extreme volatility of single equity investments. All categories of Defendants failed to implement any such strategy.

81.    The fiduciary duty of loyalty also entails a duty to avoid conflicts of interest and to resolve them promptly when they occur.  A fiduciary must always administer a plan with single-minded devotion to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

82.    Defendants breached their co-fiduciary obligations by, among their other failures: knowingly participating in, or knowingly undertaking to conceal, the failure to prudently and loyally manage the Plan's assets with respect to offering Company Stock as an investment option in the Plan; enabling Defendants' failure to prudently manage the Plan's assets with respect to the Plan's investments; and, having knowledge of the failure to prudently manage the Plan's assets, yet not making any effort to remedy the breach.

83.    Specifically, at least some of the defendants had actual knowledge of Lehman's corporate malfeasance and questionable reporting and business.  In addition, in light of their

high-ranking positions as high ranking officers at the Company, Director Defendants had/should have had constructive knowledge of these activities.

84.    Despite this knowledge, Defendants participated in each other's failures to prudently manage the Plan's assets and knowingly concealed such failures by not informing Participants that the Plan's holdings of Lehman Stock were not being prudently managed.  They also failed to remedy their mutual breaches of the duty to prudently manage the Plan's investment in Lehman Stock, despite inarguably having knowledge of such breaches.

85.    Furthermore, through their own failure to prudently and loyally manage the Plan's investment in Lehman Stock, or to undertake any genuine effort to investigate the merits of such investment, or to ensure that other fiduciaries were doing so, Defendants enabled their co-fiduciaries to breach their own independent duty to prudently and loyally manage the Plan's investment in Lehman Stock.

86.    As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan, and indirectly Plaintiff and the Plan's other Participants and beneficiaries, lost a significant portion of their investments meant to help Participants save for retirement.

87.    Pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) and ERISA § 409, 29 U.S.C. § 1109(a), Defendants are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count.

COUNT II

88.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

89.    At all relevant times, as alleged above, Defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

90.    As alleged above, the scope of Defendants' fiduciary duties and responsibilities included disseminating Plan documents and information to Participants regarding the Plan and assets of the Plan.  In addition, Defendants had a duty to provide Participants with information they possessed that they knew or should have known, would have an extreme impact on the Plan.

91.    The duty of loyalty under ERISA requires fiduciaries to speak truthfully to Participants, not to mislead them regarding the Plan or the Plan's assets, and to disclose information that Participants need in order to exercise their rights and interests under the Plan. This duty to inform Participants includes an obligation to provide Participants and beneficiaries of the Plan with complete and accurate information, and to refrain from providing false information or concealing material information regarding the Plan's investment options such that Participants can make informed decisions with regard to investment options available under the Plan, this duty applies to all of the Plan's investment options, including investment in Lehman Stock.

92.    Because a substantial percentage of the Plan's assets were invested in Lehman Stock, and Defendants chose to invest overwhelmingly in Lehman Stock, such investment carried with it an inherently high degree of risk.  This inherent risk made Defendants' duty to provide complete and accurate information particularly important with respect to Company Stock.

93.     Specifically, Lehman, through its officers and directors, issued a multitude of false and misleading statements through SEC filings and press releases regarding value of Lehman Stock and the financial health of the Company.

94.     Upon information and belief, such communications were disseminated directly to all Participants, which incorporated by reference the Company's materially misleading and inaccurate SEC filings and reports furnished by Lehman, through its officers and Director Defendants.  In addition, upon information and belief, the Company communicated directly with all Participants regarding the merits of investing in Lehman Stock in company-wide and uniform communications, and, yet, in the context of such communications failed to provide complete and accurate information regarding Lehman Stock as required by ERISA.

95.     In addition, Defendants were responsible for providing Participants in the Plan with investment education and communication.  Defendants, however, failed to disclose any information to Plan Participants regarding Lehman's deceitful business practices and how these activities adversely affected Company stock as a prudent investment option under the Plan. Defendants thus breached their duty to provide Participants with complete and accurate information necessary for making informed investment decisions with regard to investment options under the Plan.

96.     Defendants breached their duty to inform Participants by failing to provide complete and accurate information regarding Lehman Stock, making material misrepresentations about the Company's financial condition, and, generally, by conveying inaccurate information regarding the soundness of Lehman Stock and the prudence of investing retirement contributions in the Company's stock.

97.    These failures were particularly devastating to the Plan and the Participants, as a significant percentage of the Plan's assets were invested in Lehman Stock during the Class Period and, thus, the stock's precipitous decline had an enormous impact on the value of Participants' retirement assets.

98.    In addition, Lehman and the other defendants knew or should have known that information they possessed regarding the true condition of Lehman would have an extreme impact on the Plan. Yet, in violation of their fiduciary duties, Defendants failed to provide Participants with this crucial information.

99.    As a consequence of the failure of Defendants to satisfy their disclosure obligations under ERISA, Participants lacked sufficient information to make informed choices regarding investment of their retirement savings in Lehman Stock, or to appreciate that under the circumstances known to the fiduciaries, but not known by Participants, Lehman Stock was an inherently unsuitable and inappropriate investment option for their Plan accounts. Had accurate information been provided, Participants could have protected themselves against losses accordingly, and consequently, Participants relied to their detriment on the incomplete and inaccurate information provided by Defendants in their fiduciary communications and failures thereof.

100.    As a consequence of Defendants' breaches of fiduciary duty, the Plan suffered tremendous losses. If Defendants had discharged their fiduciary duties to prudently invest the Plan's assets, the losses suffered by the Plan would have been minimized or avoided. Therefore, as a direct and proximate result of the breaches of fiduciary and co-fiduciary duties alleged

herein, the Plan, and indirectly Plaintiff and the other Class members, lost millions of dollars of retirement savings.

101.    Pursuant to ERISA §§ 409 and 502(a), 29 U.S.C. §§ 1109(a) and 1132(a), Defendants in this Count are liable to restore the losses to the Plan caused by their breaches of fiduciary duties and to provide other equitable relief as appropriate.

COUNT III

102.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

103.    At all relevant times, as alleged above, Defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). At all relevant times, as alleged above, the scope of the fiduciary responsibilities of Defendants included the responsibility to appoint, evaluate, and monitor other fiduciaries. The duty to monitor entails both giving information to and reviewing the actions of the monitored fiduciaries. Defendants had the duty to:

(a)    Ensure that the appointed Plan fiduciaries possess the needed credentials and experience, or use qualified advisors and service providers to fulfill their duties. They must be knowledgeable about the operations of the Plan, the goals of the Plan, as noted above, and the behavior of the Plan's Participants;

(b)    Ensure that the appointed Plan fiduciaries are provided with adequate financial resources to do their job;

(c)    Ensure that the appointed Plan fiduciaries have adequate information to do their job of overseeing the Plan's investments;

(d)    Ensure that the appointed Plan fiduciaries have ready access to outside,

impartial advisors when needed;

(e)    Ensure that the appointed Plan fiduciaries maintain adequate records of the information on which they base their decisions and analysis with respect to the Plan's investment options; and

(f)    Ensure that the appointed Plan fiduciaries report regularly to the Company, the Company must then review, understand, and approve the conduct of the hands-on fiduciaries.

104.    Under ERISA, a monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment of plan assets, and must take prompt and effective action to protect the plan and participants when they are not.    In addition, a monitoring fiduciary must provide the monitored fiduciaries with complete and accurate information in their possession that they know or reasonably should know that the monitored fiduciaries must have in order to prudently manage the plan and the plan assets.

105.    Defendants breached their fiduciary monitoring duties by, among other things, (a) failing to ensure that the appointed Plan fiduciaries were given adequate information about the Company's business problems alleged above, which made Company Stock an imprudent investment, which was necessary for them to perform their duties of overseeing the Plan's investments, and (b) failing to ensure that the monitored fiduciaries completely appreciated the huge risk of significant investment by rank and file employees in an undiversified employer stock fund which was made up primarily of Company Stock, an investment that was imprudent

and inherently subject to significant downward movements, especially here where the stock was artificially inflated by non-public corporate malfeasance and illicit activities.

106.    Defendants also breached this duty by not properly disclosing information, that they knew or should have known, about the Company's improper business practices to the Trustee.  The Trustee is responsible for investing and managing assets of the Plan.  However, in doing so, the Trustee shall be subject to the direction and guidance of Lehman.

107.    Defendants knew or should have known that the fiduciaries they were responsible for monitoring were (a) imprudently allowing the Plan to continue offering Lehman Stock as an investment alternative for the Plan, and (b) continuing to invest the assets of the Plan in Lehman Stock when it no longer was prudent to do so.  Despite this knowledge, Defendants failed to take action to protect the Plan, and concomitantly the Plan's Participants, from the consequences of these fiduciaries' failures.

108.    Defendants are liable as co-fiduciaries because they knowingly participated in each other's fiduciary breaches as well as those by the appointed Plan fiduciaries, they enabled the breaches by these Defendants, and they failed to make any effort to remedy these breaches, despite having knowledge of them.

109.    As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan, and indirectly the Plaintiff and the Plan's other Participants and beneficiaries, lost a significant portion of their investments meant to help Participants save for retirement.

110.    Pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) and ERISA § 409, 29 U.S.C., § 1109(a), Defendants are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count.

COUNT IV

111.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

112.    At all relevant times, as alleged above, Defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

113.    ERISA § 404(a)(l)(A), 29 U.S.C. § 1104(a)(l)(A), imposes on a plan fiduciary a duty of loyalty, that is, a duty to discharge his/her duties with respect to a plan solely in the interest of Participants and beneficiaries and for the exclusive purpose of providing benefits to Participants and beneficiaries.

114.    Given the allegations listed above, Defendants clearly placed the interests of themselves and the Company, as evidenced by the longstanding artificial inflation of Company Stock, before the interests of the Plan and its Participants and beneficiaries.  These conflicts of interest put Defendants in the inherently problematic position of having to choose between their own interests as directors, officers, executives (and Lehman stockholders), and the interests of the Plan's Participants and beneficiaries, in whose interests Defendants were obligated to loyally serve with an "eye single."

115.    Defendants breached their duty to avoid conflicts of interest and to promptly resolve them by, inter alia: failing to engage independent fiduciaries who could make independent judgments concerning the Plan's investment in Lehman Stock; failing to notify appropriate federal agencies, including the SEC of the facts and transactions which made Lehman Stock an unsuitable investment for the Plan; failing to take such other steps as were necessary to ensure that Participants' interests were loyally and prudently served; with respect to

each of these above failures, doing so in order to prevent drawing attention to the Company's inappropriate practices; and by otherwise placing the interests of the Company and themselves above the interests of the Participants with respect to the Plan's investment in Company Stock.

116.    Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) and ERISA § 409, 29 U.S.C. § 1109(a), Defendants in this Count are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count.

COUNT V

117.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

118.    ERISA § 405(a), 29 U.S.C. § 1105, imposes liability on a fiduciary, in addition to any liability which he may have under any other provision, for a breach of fiduciary responsibility of another fiduciary with respect to the same plan if (a) he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (b) he fails to comply with § 1104(a)(l) in the administration of his specific responsibilities which give rise to his status as a fiduciary, by enabling such other fiduciary to commit a breach; or (c) he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

119.    As alleged herein, Lehman, through its officers and directors, withheld material information from the Plan's Participants and provided misleading disclosures, by the conduct set forth above, and profited from such practices, and, thus, knowledge of such practices is imputed to Defendants as a matter of law.  In addition, as alleged herein on information and belief, Defendants participated in and/or knew about the Company's misrepresentations regarding the

Company's financial condition.  Thus, Defendants had knowledge at all relevant times of the factual matters pertaining to the imprudence of Lehman Stock as an investment for the Participants' retirement assets.

120.    Despite this knowledge, Defendants knowingly participated in their co-fiduciaries' failures to prudently and loyally manage the Plan's investment and holding of Lehman Stock during the Class Period.  They did so by themselves making imprudent and disloyal decisions respecting the Plan's investment in Lehman Stock in the manner alleged herein in violation of ERISA § 405(a)(l)(A).  In addition, Defendants failed to undertake any effort to remedy their co-fiduciaries' and one-another's failures to prudently and loyally manage the Plan's investment in Lehman Stock despite knowing such failures were breaches of fiduciary duty under ERISA. Instead, they allowed the harm to continue and contributed to it throughout the Class Period in violation of ERISA § 405(a)(l)(C).

121.    In further violation of ERISA § 405(a)(l)(C), Defendants also knew that inaccurate and incomplete information had been provided to Participants, yet, they failed to undertake any effort to remedy this breach by ensuring that accurate disclosures were made to Participants and the market as a whole.  Instead, they compounded the problem by downplaying the significance of Lehman's problems and further concealing such practices from Participants and the market as a whole.

122.    In addition, Defendants enabled the imprudent asset management decisions of any and all other Defendants -- including any appointed Plan fiduciaries -- who lacked knowledge of the circumstances rendering the stock imprudent, by failing to provide such persons with complete and accurate information regarding the stock, or to the extent all such persons

possessed the information, by failing to ensure that they appreciated the true risks to the Plan caused by the Company's improper practices, so that Defendants could effectively discharge their obligation to prudently and loyally manage the Plan's investment in Lehman Stock. In so doing, Defendants breached ERISA § 405(a)(l)(B).

123.    Further, through their failure to properly and effectively monitor and remove those fiduciaries whose performance was inadequate as alleged above, Defendants enabled these appointed Plan fiduciaries' imprudent management of the Lehman Stock in the Plan.

124.    As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan, and indirectly Plaintiff and the Plan's other Participants and beneficiaries, lost a significant portion of their retirement investment.

125.    Pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) and ERISA § 409, 29 U.S.C. § 1109(a), Defendants are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count.

## COUNT VI

126.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

127.    To the extent that Lehman is found not to have been a fiduciary or to have acted in a fiduciary capacity with respect to the conduct alleged to have violated ERISA, Lehman knowingly participated in the breaches of those defendants who were fiduciaries and acted in a fiduciary capacity and as such is liable for equitable relief as a result of participating in such breaches.

128.    Lehman benefited from the breaches by discharging its obligations to make contributions to the Plan in amounts specified by contributing Lehman Stock to the Plan while the value of the stock was inflated as the result of the breaches of fiduciary duty alleged herein and as a result of Lehman providing the market with materially misleading statements and omissions.  Accordingly, Lehman may be required to disgorge this benefit or a constructive trust should be imposed on treasury shares of Lehman Stock which would have been contributed to the Plan, but for Lehman's participation in the foregoing breaches of fiduciary duty.

CAUSATION

129.    The Plan suffered millions of dollars in losses in Plan benefits because substantial assets of the Plan were imprudently invested or allowed to be invested by Defendants in Lehman Stock during the Class Period, in breach of Defendants' fiduciary duties.  These losses to the Plan were reflected in the diminished account balances of the Plan's Participants.

130.    Defendants are responsible for losses in Plan benefits caused by the Participants' direction of investment in Lehman Stock, because Defendants failed to take the necessary and required steps to ensure effective and informed independent participant control over the investment decision-making process, as required by ERISA § 404(c), 29 U.S.C. § 1104(c), and the regulations promulgated thereunder.  Defendants concealed material, non-public facts from Participants, and provided inaccurate, incomplete and materially misleading information to them regarding the true health and ongoing profitability of the Company, thereby misrepresenting the Company's soundness as an investment vehicle.  As a consequence, Participants could not exercise independent control over their investments in Lehman Stock, and Defendants remain liable under ERISA for losses caused by such investment.

131.    Defendants are also responsible for all losses in Plan benefits caused by the investment of the Plan's Company Contributions in Lehman Stock during the Class Period, as Defendants controlled the investment, and the investment was imprudent.

132.    Had Defendants properly discharged their fiduciary and/or co-fiduciary duties, including the provision of full and accurate disclosure of material facts concerning investment in Lehman Stock, eliminating such Company Stock as an investment alternative when it became imprudent, and divesting the Plan from its holdings of Lehman Stock when maintaining such an investment became imprudent, the Plan would have avoided a substantial portion of the losses that it suffered.

133.    Also, reliance is presumed in an ERISA breach of fiduciary duty case. Nevertheless, to the extent that reliance is an element of the claim, Plaintiff relied to their detriment on the misstatements and omissions that Defendants made to Plan Participants.

REMEDY FOR BREACHES OF FIDUCIARY DUTY

134.    Defendants breached their fiduciary duties in that they knew or should have known the facts as alleged above, and therefore knew or should have known that the Plan's assets should not have been invested in Lehman Stock during the Class Period.    As a consequence of Defendants' breaches, the Plan suffered significant losses.

135.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) authorizes a plan participant to bring a civil action for appropriate relief under ERISA § 409, 29 U.S.C. § 1109.  Section 409 requires "any person who is a fiduciary. . . who breaches any of the . . . duties imposed upon fiduciaries . . . to make good to such plan any losses to the plan . . . ."  Section 409 also authorizes "such other equitable or remedial relief as the court may deem appropriate . . . ."

136. With respect to calculation of the losses to a plan, breaches of fiduciary duty result in a presumption that, but for the breaches of fiduciary duty, the Participants and beneficiaries in the Plan would not have made or maintained their investments in the challenged investment and, where alternative investments were available, that the investments made or maintained in the challenged investment would have instead been made in the most profitable alternative investment available. In this way, the remedy restores the values of the Plan's assets to what they would have been if the Plan had been, properly administered.

137. Plaintiff and the Class are therefore entitled to relief from Defendants in the form of: (a) a monetary payment to the Plan to make good to the Plan the losses to the Plan resulting from the breaches of fiduciary duties alleged above in an amount to be proven at trial based on the principles described above, as provided by ERISA § 409(a), 29 U.S.C. § 1109(a); (b) injunctive and other appropriate equitable relief to remedy the breaches alleged above, as provided by ERISA §§ 409(a) and 502(a)(2-3), 29 U.S.C. §§ 1109(a) and 1132(a)(2-3); (c) reasonable attorney fees and expenses, as provided by ERISA § 502(g), 29 U.S.C. § 1132(g), the common fund doctrine, and other applicable law; (d) taxable costs; (e) interest on these amounts, as provided by law; and (f) such other legal or equitable relief as may be just and proper.

138. Under ERISA, each defendant is jointly and severally liable for the losses suffered by the Plan in this case.

ERISA SECTION 404(c) DEFENSE INAPPLICABLE

139. ERISA § 404(c) is an affirmative defense that provides a limited exception to fiduciary liability for losses that result from Participants' exercise of control over investment

decisions.   In order for § 404(c) to apply, Participants must in fact exercise "independent control" over investment decisions, and the fiduciaries must otherwise satisfy the procedural and substantive requirements of ERISA § 404(c), 29 U.S.C. § 1104(c) and the regulations promulgated under it.

140.    Those provisions were not complied with here as, among other reasons, instead of taking the necessary steps to ensure effective participant control by complete and accurate material information disclosure, Defendants did exactly the opposite.   As a consequence, Participants in the Plan did not have informed control over the portion of the Plan's assets that were invested in Lehman Stock as a result of their investment directions, and Defendants remained entirely responsible for losses that result from such investment.

141.    Because ERISA § 404(c) does not apply here, Defendants' liability to the Plan, the Plaintiff and the Class for relief stemming from Participants' decisions to invest contributions in Lehman Stock is established upon proof that such investments were or became imprudent and resulted in losses in the value of the assets in the Plan during the Class Period.

142.    Furthermore, under ERISA, fiduciaries -- not Participants -- exercise control over the selection of investment options made available to Participants.   Thus, whether or not Participants are provided with the ability to select among different investment options, and whether or not Participants exercised effective control over their investment decisions (which was not the case here), liability attaches to the fiduciaries if an imprudent investment is selected by the fiduciaries and presented as an option to Participants, and as a result of such action the Plan suffers a loss.   Because this is precisely what occurred in this case, Defendants are liable for the losses incurred by the Plan.

143.    Finally, Defendants remain liable for Plan losses that pertain to Lehman Stock acquired by the Plan with employer contributions, as Participants did not exercise any control.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for:

A.    A Declaration that Defendants, and each of them, have breached their ERISA fiduciary duties to the Participants;

B.    A Declaration that Defendants, and each of them, are not entitled to the protection of ERISA § 404(c)(l)(B), 29 U.S.C. § 1104(c)(l)(B);

C.    An Order compelling Defendants to make good to the Plan all losses to the Plan resulting from Defendants' breaches of their fiduciary duties, including losses to the Plan resulting from imprudent investment of the Plan's assets, and to restore to the Plan all profits Defendants made through use of the Plan's assets, and to restore to the Plan all profits which the Participants would have made if Defendants had fulfilled their fiduciary obligations;

D.    Imposition of a Constructive Trust on any amounts by which any Defendant was unjustly enriched at the expense of the Plan as the result of breaches of fiduciary duty;

E.    An Order enjoining Defendants, and each of them, from any further violations of their ERISA fiduciary obligations;

F.    An Order requiring Defendants to appoint one or more independent fiduciaries to participate in the management of the Plan's investment in Lehman Stock;

G.    Actual damages in the amount of any losses the Plan suffered, to be

allocated among the Participants' individual accounts as benefits due in proportion to the

accounts' diminution in value;

    H.  An Order awarding costs pursuant to 29 U.S.C. § 1132(g);

    I.  An Order awarding attorneys' fees pursuant to 29 U.S.C. § 1132(g) and

the common fund doctrine; and

    J.  An Order for equitable restitution and other appropriate equitable

monetary relief against Defendants.

Dated:  June 18, 2008

**GAINEY & McKENNA**

By: _____

Thomas J. McKenna
295 Madison Avenue
New York, NY 10017
Telephone: (212) 983-1 300
Facsimile: (212) 983-0383
Email: tjmckenna@gaineyandmckenna.com

***Attorneys for Plaintiff***